NEW—YORK PRACTICE REPORTS.  **123**

Lowber agt. The Mayor, &c., of the City of New-York.

## SUPREME COURT.

### LOWBER agt. THE MAYOR, &C., OF THE CITY OF NEW-YORK.

The court has, and can exercise the essential inherent powers of efficiently control-ling every proceeding in an action pending in it, so as effectually to protect every person actually interested in the result, from injustice and fraud; and it will not allow itself to be made the instrument of wrong in any respect.

And it is the duty of every judge upon the bench, exercising sound discretion and caution, to not only rectify proceedings in actions in the court, which are prop-erly brought to its notice by the intervention of any person having an interest in the result, whether formally a party to the action or not, but to employ a vigilant eye, through every stage of the action, without waiting for the sugges-tion of others, for the purpose of avoiding and detecting the perpetration of any wrong which may be attempted by the instrumentality of legal forms.

As a general rule, none but parties on the record to an action, will be allowed to meddle with its management, or will be recognized as having any standing in court in relation to it, but even this rule must yield to the circumstances of the case.

For instance, a (judgment) creditor, not a party to the record, may move to set aside a judgment by confession, fraudulently made by his judgment debtor. So the court will not allow a trustee to concede away any portion of the trust es-tate without ample consideration, &c.

As a tax payer and an officer of the corporation, the *comptroller* of the city of New-York, may make an application to the court, on facts tending to show collusion, to set aside a judgment entered against the mayor, aldermen and commonalty, of the city of New-York, through the consent of their officials.

*New-York General Term, December,* 1857.

THIS was an appeal by the plaintiff, from an order made at the special term, setting aside a judgment and execution, in favor of the plaintiff against the defendants, for some $200,000, and allowing the defendants to come in and defend, &c.

JOHN M. BARBOUR, D. DUDLEY FIELD, *and* WM. CURTIS NOYES, *for plaintiff.*

JAMES R. WHITING, *for defendants.*

By the court—CLERKE, Justice.   I presume that it will not be disputed, even by the counsel for the plaintiff, that it be-

longs to the essential, inherent powers of this court, to exercise such an efficient control over every proceeding in an action pending in it, as effectually to protect every person actually interested in the result from injustice and fraud, and that it will not allow itself to be made the instrument of wrong, no less on account of its detestation of everything conducive to wrong, than on account of that regard which it should unceasingly entertain for its own character and dignity. And it will not only rectify proceedings of this nature, when brought to its notice by the intervention of any person having an interest in the result, whether formally a party to the action or not, but it is the solemn and imperative duty of every judge upon the bench to employ a vigilant eye, without waiting for the suggestion of others, for the purpose of avoiding and detecting the perpetration of any wrong which may be attempted by the instrumentality of legal forms. This vigilance should be exercised through every stage of the action, from the issuing of the summons to the levying of the execution. This superintendence, and this exercise of power, should indeed be regulated by a sound discretion, and with the utmost caution. Rules, orders, and decisions of the court, deliberately made, should not be lightly disturbed.

As a general rule, none but parties to an action will be allowed to meddle with its management, or will be recognized as having any standing in court in relation to it. When the litigants consist of adults, not under restraint and not insane, acting in their own right, the presumption that every man is the proper director of his own interests, and the serious inconvenience that would ensue from allowing the unsolicited interference of persons not interested, render it expedient that the court shall lend no attention to any but the parties on the record. Even this rule must yield to the circumstances of the case. Even adult parties, apparently acting in their own right, and presenting themselves apparently in the adverse position of plaintiffs and defendants, may, by seeming to adjust only their mutual rights, compromise very seriously, and perhaps irrecoverably, the rights of others. The familiar instance re-

ferred to on the argument, will at once present itself. Where one party confesses a judgment without consideration, or for too large an amount, or where it is not made in strict compliance with the directions of the Code, the judgment will be set aside on the application of a party not named on the record, but who is a creditor of the defendant. Now, on what principle is this interference allowed? Is it merely because the moving party has also obtained a judgment against the defendant? Even if this were the precise reason, it would be a very palpable instance of recognizing the right of a person not a party to the record to claim the interposition of the court in regard to it. But the reason of allowing this has no such restricted limits. In the particular instance referred to, indeed, the court will only hearken to a judgment creditor, because it is expedient to have his claim judicially established before it will be judicially recognized. But the broad reason for the interference of the court is that the plaintiff and defendant, in the fraudulent confession of judgment, have by their combined action employed its forms to accomplish an act which involves the interests of others, in the disposition of the property affected by the judgment; and whenever this is done the court has the essential inherent power to interfere; although as a general rule, as I have said, in order to avoid confusion and contention, it will not do so where the parties to the record are adults acting in their own right, and are free from restraint.

On the general principle which I have stated, the court would never allow a trustee to concede away any portion of the trust estate without ample consideration; and if he was a defendant in an action, and was about compromising the rights of his *cestui que trust*, by a confession, by letting a judgment go by default, by carelessness, or even by a palpably mistaken view of his duty, the court, at the instance of the person having the beneficial interest in the controversy, would interpose. The power of a trustee over the estate vested in him, exists only for the benefit of the *cestui que trust*, and in equity, trusts are so regarded that no act of a trustee will be recognized as valid, which is calculated to prejudice the *cestui que trust*, al-

though a purchaser without notice will be protected. Courts are equally jealous in watching all the acts of a trustee by which the interests of the trust may be compromised. The instances quoted by the plaintiff's counsel, in which the court refused to recognize the acts of unauthorized persons to bind parties to a suit, have no application to this case. If the comptroller attempted during the progress of the suit to consent of his own accord to a reference or an arbitration, without any authority from the defendants, of course, the consent would not be binding on them, and would be entirely void; but by this application he does no such thing. As a tax payer, and as an officer of the corporation, particularly identified with the administration of its financial concerns, he presents himself before this court, and informs us that the defendants, who are in fact the mere trustees of the property, and the other interests of the people of this municipality, (the corporators of whom it is composed,) are, by their conduct in relation to the plaintiff's demand, wasting the property of their *cestui que trust.*

It is not necessary to suppose that this is a case of bribery or corruption, on the part of the individual members of the common council, or of any other officers of the city government, or that the counsel of the corporation has violated his faith and intentionally betrayed the city. It requires much stronger proof than I have discovered in the papers before me, to induce me to believe, that he for a moment, contemplated any injury to his constituents. That officer, and even the members of the common council, may be sincerely of opinion, that to litigate this claim would involve the city in considerable expense, without any reasonable hope of ultimate success, and, indeed, that seems to be the conviction of many others, who cannot be suspected of any unworthy motives to influence their opinion. But, it is enough for us on this appeal to be convinced that the court below had the power to interfere, and that the evidence of the facts on which it might rightfully interfere is such, that if they had been presented to a jury, and the jury had found in the same way, their verdict would be sustained. The title of the plaintiff had been con-

demned by one court as to part of the property to be sold, and is now subject to doubts which can be removed only by a judicial investigation. On the evidence, a jury might have found as the court below has, that the value of the property was excessively overrated. The objection that by the terms of the resolution of the corporation, the contract was not then complete, but was to be made in form by the comptroller, also deserves consideration. These matters seem to have been overlooked at the trial. As they should be re-examined, we express no formal opinion upon them. The form of the judgment is also incorrect. The payment by the defendants should have been required on the plaintiff's executing and delivering to the defendants, (or filing in court for them if they refused to receive it,) a warranty deed of the premises, free from all incumbrances, (except as mentioned in the contract,) and with a good title in all other respects. Justice to all parties would be best promoted by modifying the order below, and allowing the answer and subsequent proceedings to be set aside, provided the comptroller or any other tax payer, who may be substituted in his place, shall within thirty days from a written notice of the entry of this modified order, file an original complaint as a tax payer, corporator, or otherwise, on behalf of himself and others, setting forth such matters, and making such parties, and praying such relief in the premises as he may be advised. In the meantime, let the plaintiff's proceedings in this action be stayed, and if another suit shall be commenced as above provided for, let the plaintiff's proceedings be further stayed until the final decision of the other suit. Let the plaintiff in the new suit give security in the sum of $5,000. PEABODY, J., dissenting.