# SUPREME COURT.

ZENOS DENTON, respdt., agt. JANE A. DENTON, appellt.

Section 135 of the Code forbids the court to allow a defendant, in an action of *divorce* commenced by service by *publication*, to come in and defend.

Where a judgment of divorce has beed *regularly and fairly* obtained, it ought to be considered as final and conclusive, unless reversed on appeal.

But where such a judgment has been obtained by *fraud*, and especially where both parties to be affected by a vacatur of the judgment, have been parties to the fraud, the judgment should be set aside and the injured party permitted to defend herself against the charge of adultery, on which the judgment of divorce was obtained.

Where, as in this case, both the plaintiff and the woman he has married have conspired to impose upon the court, and have thereby obtained a judgment which would never have been ordered had the whole truth been disclosed, they cannot be permitted to enjoy the fruit of their unfair practices.

Every court of record, unless restrained by positive enactment, has the power to vacate its judgments when it is established that they were obtained by fraud.

If the provision of the Code sanctions such proceedings to obtain a judgment of divorce as was resorted to in this case, and binds the hands of the courts so that no relief can be afforded, the sooner such legislation is repealed the better for the peace and good order of society.

*Fourth Judicial Department, General Term, March,* 1871.
MULLIN, *P. J.,* JOHNSON *and* TALCOTT, *JJ.*

APPEAL by defendant from judgment of special term.

The defendant made a motion at the special term, to set aside the judgment of divorce obtained against her in this action. The service of the summons and complaint were by publication; at the time of the service, she was a resident of the state of Wisconsin. The relief was sought on the ground that the judgment was obtained by fraud, practised by the plaintiff upon her, as well as upon the court. The motion was denied, and from that order she appeals.

G. W. DAGGETT, *for appellant.*
NOYES & HEDGES, *for respondent.*

*By the court,* MULLIN, *P. J.*—The facts appearing in the motion papers are as follows, viz.:

In or about the year 1851, the parties were married in Livingston county in this state. They continued to reside there as husband and wife until the spring of 1865, when the plaintiff advised the defendant to take with her one of the children, and go and visit her relatives in Wisconsin; promising that in the fall he would take the other children with him and join her there, where he intended permanently to reside.

Plaintiff carried defendant and her child to a neighboring railroad station, purchased tickets for them to Milwaukie, gave her $15 to pay the expenses of their journey, and put them on the cars, and they went, according to the understanding with the plaintiff, to defendant's relations in Wisconsin.

For about a year after defendant arrived at Rippon, where her relatives resided, she received, from time to time, letters from the plaintiff. She was then taken sick, and continued so for about a year. Her friends were poor; she received nothing from her husband; he ceased to write to her; and she was compelled to apply to the officers charged with the care of the poor, for assistance, and she was assisted by them. When she recovered her health she went to Illinois and worked as a house-servant, and when she had earned enough to pay her expenses back to this state, she returned thereto, to learn that her husband had obtained a divorce from her, by reason of her adultery committed before her removal from this state, and that he had married another woman with whom he was living. Of the proceedings to procure the divorce she had never heard until her return; and as soon thereafter as practicable she made the motion to set aside the judgment, and for leave to come in and defend the action.

She denies, in the most unequivocal terms, the adultery charged, and all the matters sworn to by the witnesses ex-

Denton agt. Denton.

amined on behalf of the plaintiff to prove the adultery, and there is no evidence on the part of the plaintiff that her statements are not true, except the proofs taken by the referee, on the reference to ascertain and report whether the matters charged in the complaint were true.

It would seem that the proceedings in the action were in conformity to the provisions of the Code, but the judgment was obtained by the grossest fraud and collusion, practised as well upon the defendant as upon the court.

The plaintiff was sworn and examined before the referee, and swore amongst other things, that the defendant had left him without his consent, and had gone to Wisconsin to reside. It appears, however, by the affidavit of the defendant and another witness, and by the plaintiff's confessions to others, that he had induced her to go west, under the assurance that he would join her with two of her children in the fall, and would then make that state his residence—that he furnished her the money to go with, aided and assisted her in going, and knew when she intended to go and where she intended to reside. This matter thus sworn to by the plaintiff, although false, was not material to the issue to be tried, but it shows the *animus* of the man, and the desperate means to which he was prepared to resort to accomplish his purpose.

It is impossible to read the defendant's story and not be satisfied that the plaintiff induced her to go west, in order that he might proceed against her as a non-resident and thus prevent her from interposing any defense to his action for a divorce.

The plaintiff's attorney made affidavit that he enclosed a copy of the summons and complaint in an envelope, and directed the same to the defendant at Rippon, in March, 1866, at which time, she resided there. These papers were never received by her, nor did she in any other manner learn of the commencement of the action against her.

The only witnesses called before the referee, to prove the

adultery, were the plaintiff's brother, and one Isabella S. Wilkinson. The brother testified to no fact that would justify the finding of the commission of the adultery charged in the complaint.

Isabella is the witness who swears to the adultery. She testifies that on the 5th, October, 1864, and before the defendant went west, she saw defendant and one Milton W. Seymour in the same bed one night at the house of said Seymour. He was a man of family at the time. She (the witness) was there at Seymour's, taking care of his children.

In April, 1864, and while plaintiff was sick at his fathers, the witness says she went to his (plaintiff's) house early in the morning, and defendant and one Keith came to the door which was locked. Defendant told him that she, (defendant) was afraid to stay in the house alone, and got Keith to stay with her. She also told witness, that she was going to leave her husband, that she could find a man that she thought more of than she did of him. This witness and plaintiff's brother also testified that Keith was a licentious man, and was in the habit of visiting defendant when plaintiff was from home, and that there were reports in circulation that defendant was not a woman of chastity.

Could the referee or the court that rendered the judgment of divorce, have supposed that this Isabella S. Wilkinson was the wife of Milton W. Seymour, at the time that she saw him and the defendant in bed together at his (Seymour's) house? Could they imagine that this Isabella, who swore that when this adultery was committed, was living at Seymour's, and taking care of his children, was at that very time Seymour's wife, and the mother of the children she was taking care of?

The order for publication was made the 19th March, 1866. On the 11th of that month, this Isabella wrote to defendant, a friendly letter, in which she informs him that she has got a divorce from her husband, Seymour—but not

Denton agt. Denton.

an allusion to any improper intimacy between defendant and him, but on the contrary, speaks of her very kindly and promises her her likeness as soon as obtained.

No court would have granted plaintiff a divorce on the testimony of this woman, if her history had been disclosed ?

Her story as to the adultery, is incredible unless a freedom of intercourse between the sexes is tolerated in the community in which they lived, such as is permitted only among beasts or savages.

It is incredible that a wife would be a witness to adulterous intercourse between her husband and another woman, and not only remain silent about it, but carry on a friendly correspondence with the husband's paramour.

Good faith demanded that this woman should have disclosed to the referee and court, how she had been connected with the parties—that she had been divorced, and that the adultery was committed while she was living with Seymour as his wife, and not merely as the nurse of his children.

She was not bound to disclose that she was then engaged with the plaintiff in procuring a divorce for him, so that as soon as obtained she could marry him, as she did within a few days after the divorce was granted.

The defendant swears, and it is not denied, that the defendant furnished to Isabella the means to pay for obtaining a divorce from her husband.

It would be difficult to conceive of a more carefully planned or a more successfully executed piece of fraud and deception than the plaintiff and Isabella have planned and executed in this case, and it would be a disgrace to the courts and to our system of jurisprudence, if they furnished no remedy for such a wrong as has been done to the defendant.

The only answer to these matters sworn to by the defendant is, that § 135 of the Code, forbids the court to allow a defendant in an action of divorce, commenced by service

by publication, to come in and defend. This action was commenced by publication, and is for divorce, and hence the case is brought within the very terms of the statute.

Where a judgment of divorce has been regularly and fairly obtained, it ought to be considered as final and conclusive unless reversed on appeal.

After such a judgment is obtained, an innocent person may intermarry with the one who has been relieved from the former marriage, and if it should be set aside, the intercourse legal when begun, would become adulterous and the children of the marriage bastardized.

But when such a judgment has been obtained by fraud, and especially when both the parties to be affected by a vacatur of the judgment have been parties to the fraud, the judgment should be set aside, and the injured party permitted to defend herself against the charge of adultery on which the judgment of divorce was obtained.

If the present wife of the plaintiff, had been free of all connection with the fraudulent means by which the divorce was obtained, a court would hesitate long before it deprived her of the protection the judgment afforded, if it could be induced even by reason of the fraud of the plaintiff to interfere with the judgment. But these considerations have no application to this case, both the plaintiff and the woman he has married have conspired to impose upon the court, and have thereby obtained a judgment which would never have been ordered had the whole truth been disclosed, and they cannot be permitted to enjoy the fruit of their unfair practices.

Every court of record, unless restrained by positive enactment, has the power to vacate its judgments when it is established that they were obtained by fraud. (*Hill* agt. *Northrup*, 9 *How.*, 525 ; *Denton* agt. *Noyes*, 6 *Johns.*, 296 ; *Lowber* agt. *The Mayor*, 26 *Barb.*, 262 ; *Johnson* agt. *Popplewell*, 2 *C. & J.* (*Exchg.*,) 544; *Abbott* agt. *Richards*,

15 *M. & W.*, 193; *Cash* agt. *Wells*, 20 *E. C. L.*, 523; *The People* agt. *The Mayor*, 19 *How.*, 289).

A court of chancery has power on bill filed to vacate a judgment of a court of law obtained by fraud. (*State of Michigan* agt. *Phœnix Bank*, 33 *N. Y.*, 9, *and cases cited*). Resort to a court of equity becoming necessary, because of the difficulty there formerly was in courts of law in trying questions of fact arising on motions, and particularly questions of fraud. And when discovery was necessary it was powerless to grant relief.

When, however, none of these difficulties presented themselves, the court granted relief on motion, and only turned the parties over to the expensive and tedious remedy of a suit in chancery, where it found itself unable to determine the questions of fact arising on the motion.

But now, courts of law are authorized to refer it to a referee to take proof on disputed questions of fact arising on motion, and in that way, to afford the parties an opportunity to ascertain the truth by the examination of the witnesses produced before such referee. On the coming in of the evidence thus taken, the court of law is as capable of passing upon the questions of fact as would be a judge sitting in equity.

There is not, therefore, ordinarily any necessity now for sending a party seeking to set aside a judgment for fraud in obtaining it, to a court of equity. There may, however, be cases in which that course may still be not only proper, but necessary.

It is said by the defendants counsel that before the adoption of section 135 of the Code, the court had no power to grant a judgment of divorce in an action commenced by publication; and as that power is given by the Code, the court possesses no power over the judgment except such as it permits, and as, by the same section, it is forbidden to let a defendant, in such action, in to defend, such relief cannot be granted.

If the proposition of the counsel is limited to cases of judgments regularly and fairly obtained, I agree with him. But if he means to assert that the court has no power to set aside such a judgment when obtained by fraud, I cannot agree with him.

When the jurisdiction of a court is extended to a new subject, the court deals with that subject precisely as it does with other cases within its jurisdiction, unless expressly restrained, and it will regulate or set aside the proceedings therein in the same cases and subject to the same rules as are applied in other cases.

If the court has not power to set aside judgments in divorce cases, on motion, when obtained by fraud, the most mischievous consequences must follow. The highest possible inducement would be held out to husbands tired of their wives, or wives tired of their husbands, to resort to fraud and perjury in order to effect a release from a connection that has ceased to be agreeable.

If the provision of the Code sanctions such proceedings, and binds the hands of the courts so that no relief can be afforded, the sooner such legislation is repealed the better for the peace and good order of society:

If a defendant in an action of divorce cannot be let in to defend, on motion, because of the injustice that may be done to persons who may have married upon the faith of the validity of the judgment, the same considerations forbid a resort to a court of equity to vacate the judgment. A court of equity might have power to grant the relief prayed for, but if the effect upon innocent third persons is to control, it would be constrained to refuse to interfere with the judgment, and thus fraud and unfair practice would triumph, while the injured party, the one against whom the charge of adultery was made, and who—without an opportunity to be heard—has been convicted of it, is turned out of court with an infamous offense indelibly fastened upon

Denton agt. Denton.

her by the judgment of a court of justice, and all who are connected with her compelled to share in her disgrace.

It is much better that the court in which the judgment is entered should grant the defendant relief, afford the plaintiff an opportunity to establish, if he can, the dishonor of his wife, so that, if established, he may safely and honorably renew any engagements into which he may have entered, relying on the validity of the judgment.

If he has obtained it by unfair practices, he has no claim to the favor of the court, he is entitled to nothing beyond the most rigid application of the rules of law. If he has induced an innocent woman to marry him, in the belief that he was legally competent to enter into such a contract, it is better that she should suffer the inconvenience of having the marriage dissolved than that the innocent wife should be forever disgraced through the fraud and perjury of the husband, or of those conspiring with him to effect her ruin.

There is no conflict of evidence in this case. Defendant's affidavits are not contradicted. The question is, therefore, one of power, and of the existence of the power, and of the duty of the court to exercise it I entertain no doubt.

The judgment must be set aside, and defendant let in to defend.