## George W. Weiseham v. Walter E. Hocker *et al.*

### (Filed July 30, 1898.)

1. DEED—*Equitable Mortgage, When.* Although a deed may be absolute on its face, yet, if given merely as a security for debt, and intended by the parties as a security, it will be held to be a mortgage, with the right of redemption.

2. SAME—*Agreement for Reconveyance.* Where a deed, absolute on its face, is given in security of a debt, and an agreement or bond is executed by the grantee for reconveyance conditioned upon the payment by the grantor of the debt secured, and both instruments are of the same date, and were executed and delivered at the same time, and as parts of one transaction, they will be held to be a legal mortgage.

3. PAROL EVIDENCE—*Admissible, When—Defeasance.* Parole evidence is admissible and competent to show that a deed absolute upon its face was intended by the parties as a mortgage, that it was given for the security of a debt, and that a bond given by the grantee for a reconveyance, if the debt secured was paid, was intended by the parties as a defeasance, and not an ordinary bond for title.

4. MORTGAGE—*Assignee of Separate Defeasance.* The assignee of a separate defeasance to a mortgage, though in the form of an ordinary title bond, cannot require of the maker of such instrument a conveyance of the property, containing the usual covenants of warranty, and cannot maintain an action thereon for specific performance, and obtain judgment for a conveyance with usual covenants of warranty. His rights are only the rights of a mortgagor, and are to be enforced by proceedings to redeem from the lien of the mortgage.
(Syllabus by the Court.)

*Error from the District Court of Cleveland County; before Henry W. Scott, District Judge.*

*Amos Green & Son,* for plaintiff in error.

*J. W. Hocker* and *Zoll J. Woods,* for defendant in error.

Action by George W. Weiseham against Walter E. Hocker and James W. Hocker for specific performance of a contract for the conveyance of real estate. From a

judgment for defendants, plaintiff brings error. Affirmed.

Opinion of the court by

TARSNEY, J.: On December 1, 1891, the defendants in error, W. E. Hocker, as principal, and James W. Hocker, as surety, executed and delivered to James Lappin an instrument in the form of a title bond, conditioned for the conveyance of lots 7 and 8, block 55, and lot 16, block 54, in the town of Lexington, provided that said Lappin should on or before the 1st day of May, 1892, pay the said W E. Hocker the sum of $747.21. This instrument was, on March 28, 1892, assigned by Lappin to the plaintiff in error, who brings this action for specific performance. Defendants answered to plaintiff's petition with a general denial, and, specially answering, averred that on July 16, 1891, James Lappin was the owner of said property; that a judgment had been rendered against him, and said property was levied upon, and advertised for sale by the sheriff; that for the purpose of preventing said property from being sold, and to secure the payment of said judgment and a certain note owing by Lappin to the Chickasaw Bank of Purcell, Lappin executed and delivered to A. D. Hawk, representing said bank, the owner of said judgment and note, a deed to the property in controversy; that at the time of making said deed, and as part of said transaction, Hawk agreed with Lappin, in the event of payment of said judgment and note, and upon such payment, he would reconvey said property to Lappin; that it was agreed that, if said judgment and note were not paid within a reasonable time, Hawk should sell said property, and, with the proceeds, pay said note and judgment, and pay the balance of the proceeds of sale, if any, to Lappin; that on December 1, 1891,

Lappin had not satisfied said judgment, nor paid said note, and, desiring that said property should not then be sold under the arrangement, induced W. E. Hocker, Hawk consenting thereto, to accept a deed without warranty, from Hawk and wife, of said property, conditioned, by the understanding of all the parties had at the time, that said deed was for the purpose of securing the payment of said judgment and note, and that, if Lappin did not pay said note and satisfy said judgment on or before May 1, 1892, W. E. Hocker was to sell the property, and apply the proceeds, first, to the payment of the judgment and note, and, second, the balance to Lappin; that at the time, and as a part of the same transaction, Walter E. Hocker made the instrument sued on, and James W. Hocker signed the same as security; that the amount which would be due on the judgment and note on May 1, 1892, was $747.21; that said instrument was conditioned that on the payment of said $747.21 W. E. Hocker was to reconvey the property to Lappin; that in pursuance of said agreement one of said lots was sold, and the proceeds, $354.71, was credited on said instrument, leaving a balance to be paid thereon of a like sum to entitle Lappin to a reconveyance of the remaining two lots; that on March 19, 1892, one Colbert recovered judgment against Lappin in the probate court of Cleveland county, amounting to upward of $500; that execution was issued on said judgment and levied on said lots on March 28, 1892; that under said execution said lots were sold, and bid in by the defendant Walter E. Hocker; that prior to the alleged assignment by Lappin of the instrument sued on to the plaintiff, plaintiff had full knowledge of all the transactions, agreements, and understandings between Lappin and Hawk and between Lappin, Hawk, and the

defendant, and had actual personal knowledge of the conditions under which Walter E. Hocker held the property; that the money received by Walter E. Hocker for the lots sold by him was applied to the payment of the note and judgment secured, and that there remained the sum of $354.71 due on said judgment. The defendants admitted that on March 28, 1892, plaintiff tendered to the defendants the unpaid balance of $354.71, to be paid by Lappin, upon the instrument sued on, and demanded a deed of conveyance of the property to him, the said plaintiff. The defendants tendered to the plaintiff a quit-claim deed to said property, which paintiff refused, and insisted upon a conveyance containing the usual covenants of warranty. To this answer plaintiff filed a reply, denying generally the allegations thereof. Upon the hearing the court rendered judgment for the defendants. There was no special finding of facts by the court. The finding of the court was a general finding in favor of the defendants. There was evidence tending to support and establish each and every material allegation of the defendant's answer.

The question in this case is, did the facts alleged in the answer constitute a defense to the cause of action stated in the petition? This resolves itself into two propositions: First, what was the estate or interest of Lappin in the lots in controversy on March 28, 1892, when he assigned the instrument sued on to the plaintiff? and, second, what, if anything, did plaintiff acquire by said assignment? It is a settled rule that a deed absolute upon its face, intended by the parties as a security for debt, is in equity a mortgage. (*Hughes v. Edwards*, 9 Wheat. 489; *Peugh v. Davis*, 96 U. S. 332; *Teal v. Walker*, 111 U. S. 242, 4 Sup. Ct. 420; *Worley v. Dryden*, 57 Mo.

226; *O'Neil v. Capelle*, 62 Mo. 202; *Jackson v. Lawrence*, 117 U. S. 679, 6 Sup. Ct. 915; Jones, Mortg. sec. 264.)

Whether a transaction evidenced by an absolute conveyance will be held to be a sale or only a mortgage must be determined by a consideration of the peculiar circumstances of each case. The form of the conveyance is not conclusive. The intention of the parties is the only true and infallible test. This intention is to be gathered from the circumstances attending the transaction and the conduct of the parties as well as from the face of the written contract. If a deed of conveyance be accompanied by a condition or matter of defeasance expressed in the deed, or contained in a separate instrument, or even existing merely in parol, if intended by the parties as a security for money, let the consideration for it have been a preexisting debt or a present advance of money to the grantor, if the relation of debtor and creditor remains, and a debt still subsists between the parties, the conveyance must be regarded as a security for the payment, and it is in equity a mortgage, and will be treated in all respects as a mortgage. (Jones, Mortg. sec. 264.)

It is also settled that evidence, written or oral, may be admitted to show the character of the transaction. (*Russell v. Southard*, 12 How. 139; *Babcock v. Wyman*, 19 How. 289; *Peugh v. Davis, supra*; *Brick v. Brick*, 98 U. S. 514; *Jackson v., Lawrence, supra*.)

An absolute deed and separate defeasance or agreement to reconvey, executed at the same time, amount to a mortgage. (Jones, Mortg. sec. 244, and cases cited.)

And a conveyance intended as a security for a debt, however absolute in form, will, in equity, be treated as a mortgage, and, to convert it into a mortgage, the defeasance need not be in writing. (*O'Neil v. Capelle, supra.*)

When the deed and defeasance are executed at the same time, or are agreed upon at the same time, it is a conclusion of law that they constitute a legal mortgage. (Jones, Mortg. sec. 244; *Wilson v. Shoenberger*, 31 Pa. St. 295.)

Such a deed, and an agreement to reconvey upon payment of a certain sum of money, or upon the performance of some other condition, have always been held to constitute a legal mortgage, if the instruments were of the same date, or were executed and delivered at the same time, and as one transaction. In equity, however, it is immaterial that the deed and the agreement to reconvey be executed at different times, and it is immaterial whether there be any bond or written agreement to reconvey; parol evidence being sufficient to prove the transaction to be a mortgage. (Jones, Mortg. secs. 246, 285; *Peugh v. Davis, supra*; *Sprigg v. Bank*, 14 Pet. 201; *Russell v. Southard, supra*.)

The facts alleged in defendants' answer, and sustained by the proof, clearly bring this transaction within the rules above stated, and make the relation that existed between Lappin and W. E. Hocker that of mortgagor and mortgagee. There is no conflict in the testimony touching the terms on which Lappin conveyed the lots in controversy to Hawk, or touching the terms on which they were conveyed by Hawk to defendant W. E. Hocker. The consideration expressed in the deed from Lappin to Hawk was one dollar. No money was paid, or agreed to be paid, by Hawk to Lappin, except such surplus as might arise from the sale of the lots, and remain after the payment of the debt which the conveyance was made to secure. There is no evidence whatever which it is claimed tends to show that Hawk was the purchaser of

the lots from Lappin, or that Hocker purchased the lots of Hawk, or paid, or agreed to pay, anything to him therefor. The evidence conclusively shows that the lots in controversy were first conveyed by Lappin to Hawk to secure an existing indebtedness. As a part of the same transaction it was agreed that Hawk should act as trustee to receive the proceeds of the lots when sold and ap'ly them to the payment of the debts secured, and to convey the title to the purchaser; Lappin reserving the right to find the purchaser, and make the sale. Hawk, outside the power of receiving the proceeds and applying them to the extinguishment of the debts, had only the naked power of executing a conveyance to purchasers. Clearly, this amounted to nothing more than a deed of trust in the nature of a mortgage, Hawk being vested as trustee with the legal title only for the purposes of the trust. By the subsequent arrangement between Lappin, Hawk, and the defendants, the trust was transferred to W. E. Hocker. Hawk executed to him a quit-claim deed. In this he was acting as trustee for Lappin, and the deed was, in legal effect, the deed of Lappin. It was the same as though Hawk had surrendered his trust, and the conveyance to Hocker had been made directly by Lappin for the same purposes for which the conveyance to Hawk had previously been made. The deed to Hocker was a conveyance absolute upon its face, but at the same time, and as a part of the same transaction, Hocker executed the instrument sued on for the purpose of securing a reconveyance of the lots to Lappin, when the debts, for the security of which the deed was executed, should be paid. The deed and defeasance were executed and delivered at the same time. They formed parts of the same transaction and contract, and, taken together, as between

the parties thereto, under the authorities above cited, constituted a legal mortgage. The distinction between equitable and legal mortgages was, in this Territory, by statute, eliminated before this transaction occurred.

Laws 1890, ch. 54, sec. 3, provides that: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is deemed a mortgage, except when, in the case of personal property, it is accompanied with actual change of possession, in which case it is to be deemed a pledge." This statute was intended to make a conveyance of real estate, absolute upon its face, intended by the parties as a security for a debt, in law, as well as in equity, a mortgage, and to make the rights of the parties to such conveyance in the land to be determined the same as though the conveyance were a mortgage in ordinary form. By our statute of liens, notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property. (Laws 1890, ch. 49, sec. 10.) Hence the title of land mortgaged does not pass to the mortgagee, but remains in the mortgagor until sale under foreclosure proceedings.

Without consideration of the effect of the proceedings under the Colbert judgment, it appears from this record that on March 28, 1892, Lappin was the owner of the lots in controversy, with a right to redeem from the incumbrance of a mortgage, of which Hocker was the mortgagee, upon the payment of the sum of $356.71, and to have a proper discharge of said mortgage made, or a conveyance sufficient to release the same executed, by the said Hocker. He was not entitled to a conveyance containing the usual covenants of warranty, but only such conveyance as would have the effect of releasing the

mortgage and revesting in him such legal title as was conveyed for the purposes of the trust. The Colbert judgment, rendered on March 19, 1892, was claimed by Hocker to be a lien on the lots from that date, and to avoid liability on account of such judgment he refused to execute a warranty deed, but tendered to the plaintiff a quit-claim deed. This was all that Lappin would have been entitled to demand, and his assignee claiming under the defeasance clause of the mortgage, with knowledge of the condition of the title, could not acquire any greater right thereby than his grantor had. The Colbert judgment resulted in a sale of the property under execution levied thereon, and the mortgagee, to protect his interests, became a purchaser under such judgment sale. Assuming that the judgment obtained by Colbert was a lien upon the lots from its date, and that the proceedings thereunder were valid, the effect of such proceedings was, if not to convey the title of Lappin in the lots to Hocker absolutely, at least to invest him with the rights of the judgment creditor in the lien of such judgment, and entitle him to the payment of the judgment debt, as well as the debt secured by the mortgage, before he could be compelled to release the mortgage.

Whether a judgment of a probate court was a lien upon real estate, and whether a sale thereunder would have any validity, are questions discussed in the briefs of counsel, but not necessary or proper to be determined here, under the issue presented in this case. In an action by a mortgagor to redeem upon the facts of this case, such questions would necessarily arise in determining the amount the mortgagor would be required to pay upon a decree permitting him to redeem. The plaintiff, by the assignment of the instrument sued on, acquired

only the rights of his assignor, viz. the right to redeem from the lien of the mortgage. This he could only do by paying the mortgage debt, and such valid lien as the mortgage had acquired in the protection of the mortgage. Mistaking the character of his interests acquired by the assignment, he brought an action that cannot be maintained upon the facts shown. Upon the issue as presented by the pleadings and proofs, the judgment was for the right party. Judgment affirmed.

All of the Justices concurring.