[Civ. No. 343. Second Appellate District.—June 3, 1907.]

## J. H. KEIFER, Appellant, v. R. H. MYERS, Respondent.

TRANSFER OF STOCK—RIGHT TO REPURCHASE—PLEDGE.—Where it appears that a transfer of one-half of the stock in a corporation by plaintiff to defendant was contemporaneous with a right given to repurchase the same, that the stock had a substantial value, and that defendant neither paid nor agreed to pay anything in consideration of its transfer to him, that none of plaintiff's existing liabilities as a stockholder were canceled or assumed by defendant, and as a condition of the retransfer plaintiff was to pay one-half of the money which a bank had loaned or would loan the company, further security being given for future loans to the company,

the transfer of the stock is to be deemed a pledge and not a sale thereof.

ID.—AGREEMENTS—SINGLE TRANSACTION—LANGUAGE OF SALE NOT CONTROLLING.—The agreements whereby the stock was transferred to the defendant and the plaintiff was given the right of repurchase constituted one and the same transaction, and are to be taken together in view of all the circumstances of the case. The use of the words ''Sold, transferred, and assigned,'' and the recital that defendant is the owner of the stock cannot change the character of the transaction. For the purpose of ascertaining the real contract between the parties, the court looks beyond the terms of the instrument.

ID.—ACTION TO REDEEM FROM PLEDGE—NONSUIT.—In an action to redeem from the pledge, a motion for a nonsuit admitted the truth of plaintiff's evidence, and every inference of fact that can be legitimately drawn therefrom. Held, that a motion for a nonsuit, in view of the evidence for plaintiff, was improperly granted, and that the judgment of nonsuit must be reversed.

APPEAL from a judgment of the Superior Court of Los Angeles County. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Lynn Helm, and E. S. Williams, for Appellant.

W. R. Hervey, and R. H. Myers, *in pro. per.*, for Respondent.

SHAW, J.—Appeal from a judgment of nonsuit.

At the time in question the Sanitary Laundry Company was a corporation with a capital stock of $40,000, divided into four hundred shares of the par value of $100 each. Of this stock the appellant, J. H. Keifer, owned one hundred and ninety-eight shares, one George R. Myers owned one hundred and ninety-eight shares, and the remaining four shares were owned by three other persons, who, with said Keifer and said George R. Myers, constituted the board of directors of said corporation. The corporation was in financial distress, and it appears that neither appellant nor said George R. Myers was in a position to extend it the aid needed. The appellant had borrowed from the Broadway Bank and Trust Company $4,500, evidenced by two promissory notes,

and as security for their payment had, in addition to giving a mortgage upon certain real estate owned by him, deposited his one hundred and ninety-eight shares of stock in pledge with said bank as collateral security. The laundry company was largely indebted to said George R. Myers for moneys which he had loaned it. Under these conditions, the respondent R. H. Myers and J. H. Keifer entered into negotiations, which, on December 30, 1903, culminated in a transfer of respondent's one hundred and ninety-eight shares of stock to said R. H. Myers, and contemporaneously therewith the execution of an agreement in writing wherein it was recited that said Keifer had sold, assigned and transferred to R. H. Myers one hundred and ninety-eight shares of stock and that R. H. Myers was the owner and holder thereof; that said stock was pledged to said bank as additional security for the payment of a certain promissory note of $4,500, executed by said J. H. Keifer and his wife, which said note was also secured by a mortgage of real estate; that said laundry company during the time said Keifer was a stockholder had become largely indebted to George R. Myers for moneys by him loaned to said company; that said R. H. Myers had loaned and advanced, and would thereafter loan and advance, divers sums of money to discharge a part of the indebtedness of the said company in order to save it from bankruptcy, and to pay such of the operating expenses as might be necessary for the best interests of the company; that said Keifer desired an option to purchase one hundred and ninety-eight shares of said stock, and wherein said R. H. Myers covenanted and agreed to sell to said Keifer, within one year, time being made the essence of the contract, one hundred and ninety-eight shares of said stock, upon Keifer making payment to R. H. Myers of: 1. All moneys paid to said bank by R. H. Myers on account of the notes of said Keifer, for the payment of which said stock was held as collateral security; 2. One-half of all moneys theretofore or thereafter, up to the exercise of the option, advanced to said company by R. H. Myers, less any payments made thereon by said company; 3. One-half of all moneys theretofore loaned to said laundry company by said George R. Myers, less any payments made thereon by said company; and 4. Interest on said sums at seven per cent per annum. It was further

provided that an accounting for any dividends paid upon said stock should be made and credited to said Keifer at the time of his exercising said option to purchase. R. H. Myers covenanted to advance to the company from time to time such sums of money, not exceeding $4,000, as might be necessary to save the company from bankruptcy. At the same time, and with the consent of appellant, an agreement in writing was made between said bank and said R. H. Myers, whereby the bank agreed to deliver the one hundred and ninety-eight shares of stock so pledged to it by Keifer to the said R. H. Myers at any time upon his paying the sum of $1,000, to be applied on Keifer's indebtedness to said bank, and the delivery to the said bank of an agreement on the part of R. H. Myers to pay any deficiency, not exceeding $750, which might remain upon Keifer's notes after exhausting the real estate so held by it as security for the payment thereof.

It will be noted by this agreement with the bank, R. H. Myers assumes no obligation whatever. There was no other consideration for said transfer than that mentioned in the agreement. It appears that R. H. Myers did pay upon said indebtedness of Keifer the sum of $714.92, and no more, and that from the proceeds of the real estate so held by the bank the sum of $2,540 was paid on the principal, together with $260 interest thereon. From time to time after December 29, 1903, which was the date of both the agreement made between Keifer and Myers and that between Myers and the bank, though neither was delivered until the 30th of December, 1903, R. H. Myers advanced to said laundry company divers sums of money, part of which was paid by said company. Keifer did not exercise his option to repurchase the stock within the year, but on January 24 and January 27, 1905, he offered to repurchase and redeem said stock under the terms of said agreement, and asked respondent to render him a statement and account of the amount due thereon, which he, in writing, tendered and offered to pay. No objection was made to this tender. Respondent claimed that the transaction constituted an absolute sale, and that appellant, having failed to exercise his option within the year, had lost the right to purchase the stock. On the other hand, appellant contends that the transfer was a pledge of stock.

"The motion for nonsuit admits the truth of plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, and upon such motion the evidence should be interpreted most strongly against defendant." (*Hanley* v. *California etc. Co.*, 127 Cal. 232, [59 Pac. 577]; *Goldstone* v. *Merchants' etc. Storage Co.*, 123 Cal. 625, [56 Pac. 776].)

The record shows that the agreements dated December 29, 1903, were delivered on the following day, on which date the certificate of stock representing the one hundred and ninety-eight shares of stock which Keifer had pledged to the bank was withdrawn and a new certificate for said stock issued to R. H. Myers and by him redeposited with said bank. The agreement whereby Keifer was given the right to repurchase the stock and the transfer of the stock to R. H. Myers constituted one and the same transaction. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially the one transaction, are to be taken together. (Civ. Code, sec. 1642.)" (*Curtin* v. *Ingle*, 137 Cal. 95, [69 Pac. 836].) It appears that R. H. Myers paid no consideration whatever for the transfer of the stock; that he assumed no obligation whatever to pay anything upon Keifer's indebtedness to the bank, nor did he secure the release of Keifer's obligations as a stockholder of the company, or assume or agree to pay them. If the company failed to pay George R. Myers, Keifer was still liable for his proportion of its indebtedness, notwithstanding the loss of his stock. There was no cancellation or surrender of the evidence of any of Keifer's indebtedness. The only obligation assumed by R. H. Myers was to advance money to the company only in case it became necessary to save the company from bankruptcy. Such contingency might never arise, but if any advances were made, it was provided that Keifer should pay one-half thereof upon a repurchase of the stock. If Myers was the owner of the stock instead of the pledgee, as he claims, the covenant was an obligation to protect his own property and not Keifer's—a proposition which borders upon absurdity.

The fact that the agreement giving Keifer the right to repurchase and the transfer of the stock were contemporaneous (*Weiseham* v. *Hocker*, 7 Okla. 250, [54 Pac. 464]; *Clark* v. *London*, 90 Mich. 83, [51 N. W. 357]; *Watkins* v. *Williams*,

123 N. C. 170, [31 S. E. 388]) ; that the stock had a substantial value and Myers neither paid nor agreed to pay anything in consideration of its transfer to him (*Husheon* v. *Husheon,* 71 Cal. 407, [12 Pac. 410] ; *Rubo* v. *Bennett,* 85 Ill. App. 473) ; that none of Keifer's existing liabilities were canceled and Myers assumed no part thereof under the terms of the agreement; that as a condition of a retransfer Keifer was to pay one-half of the company's unpaid indebtedness to George R. Myers and one-half of the money which respondent had loaned the company, which shows that to this extent at least the stock was transferred as security (Civ. Code, secs. 2986, 2987) for existing debts of the company, for a part of which Keifer was liable (*Ahern* v. *McCarty,* 107 Cal. 386, [40 Pac. 482] ; *Farmer* v. *Grose,* 42 Cal. 169) ; that no fixed price was specified as a consideration for the repurchase, but the amount was to be as much as would reimburse R. H. Myers for one-half of such sums as he might advance and which might remain unpaid, including one-half of the amount due from the company to George R. Myers; that Keifer was chargeable with interest and to be credited with dividends—all are circumstances which tend, some of them very strongly, to prove that the transfer was a pledge and not a sale of the stock.

Respondent lays much stress upon the words used in the agreement, but the use of the words "sold, transferred, and assigned," and the recital that Myers is the owner of the stock, cannot change the character of the transaction. For the purpose of ascertaining the real contract made by the parties, the court looks beyond the terms of the instrument. (*Hodgkins* v. *Wright,* 127 Cal. 688, [60 Pac. 431].)

The judgment is reversed.

Allen, P. J., and Taggart, J., concurred.