[Civ. No. 1427.   Second Appellate District.—December 13, 1913.]

THOMAS E. NEWLIN, Executor of the Will of George R. Myers, Deceased, Respondent, v. R. H. MYERS, Appellant.

PLEDGE OF CORPORATE STOCK—INTERPRETATION OF CONTRACT—ACTION BY PLEDGOR TO COMPEL REDELIVERY OF SHARES—PAYMENT AS CONDITION PRECEDENT.—Where the owner of corporate stock pledges it under an agreement to protect the pledgee against all loss, expense, and liability which he may incur in the matter of a pledge of stock to him made by another stockholder, the pledgee is not entitled, in an action against him by the first pledgor to recover the shares of stock, to payment from such pledgor, as a condition to redelivery of the stock, of moneys voluntarily paid out and expended by the pledgee in a wrongful and futile attempt to hold the stock of the second pledgor. The loss, expense, and liability against which the first pledgor agreed to protect the pledgee in entering into the contract with the second pledgor was such only as he might incur, under and by virtue of the terms of that contract, and not by reason of acts on the part of the pledgee and expenditures made wholly without the terms of the agreement.

APPEAL from a judgment of the Superior Court of Los Angeles County. C. A. Raker, Judge presiding.

The facts are stated in the opinion of the court.

Harold A. Gilman, and Tanner, Taft & Odell, for Appellant.

Sheldon Borden, and Gurney E. Newlin, for Respondent.

SHAW, J.—Action to recover certain shares of corporate stock pledged by plaintiff's testate to defendant. Judgment went for plaintiff, from which defendant appeals upon a reporter's transcript.

The suit was instituted by George R. Myers, who thereafter died, and Thomas E. Newlin, as executor of his estate, was substituted as plaintiff.

The following facts shown by the uncontradicted evidence, or allegations of the complaint not denied, appear: That on December 29, 1903, the Sanitary Laundry Company was a corporation, the capital stock of which was distributed and held as follows: Plaintiff's testate, George R. Myers, 198 shares; J. H. Keifer, 198 shares; Emma B. Myers, 1½ shares; Laura Keifer, 1½ shares, and Sheldon Borden, 1 share. The corporation was in financial distress and without funds to meet its obligations, some of which were held by said George R. Myers, but neither he nor Keifer was able to make further advances to the company. Defendant was a cousin of George R. Myers and engaged in the practice of law, and theretofore had acted as his attorney and confidential legal adviser. Upon being made acquainted with the financial condition of the corporation, defendant, at the request of George R. Myers, agreed to assist him in financing the company, "claiming that in so doing he was actuated by a desire to aid and benefit the plaintiff on account of their relations aforesaid, and solely by reason of their said relations and of the relationship and previous intimacy existing between them as aforesaid." Thereupon, negotiations were initiated with the result that Keifer assigned, transferred, and delivered to defendant the 198 shares of the capital stock so owned by him, which transfer and delivery was made in accordance with a duly executed written agreement made between Keifer and defendant, wherein it was recited: That said Keifer had sold, assigned, and transferred to R. H. Myers one hundred and ninety-eight shares of stock and that R. H. Myers was the owner and holder thereof; that said stock was pledged to the Broadway Bank & Trust Company as additional security for the payment of a certain promissory note of four thousand five hundred dollars, executed by Keifer and his wife, which said note was also secured by a mortgage of real estate; that said laundry company during the time Keifer was a stock-

holder had become largely indebted to George R. Myers for moneys by him loaned to said company; that said R. H. Myers had loaned and advanced, and would thereafter loan and advance, divers sums of money to discharge a part of the indebtedness of the said company in order to save it from bankruptcy, and to pay such of the operating expenses as might be necessary for the best interests of the company; that said Keifer desired an option to purchase the one hundred and ninety-eight shares of said stock, and wherein said R. H. Myers covenanted and agreed to sell to Keifer, within one year, time being made the essence of the contract, one hundred and ninety-eight shares of said stock, upon Keifer making payment to R. H. Myers of: 1. All moneys paid to said Bank & Trust Company by R. H. Myers on account of the note of Keifer, for the payment of which said stock was held as collateral security; 2. One-half of all moneys theretofore or thereafter, up to the exercise of the option, advanced to said company by R. H. Myers, less any payments made thereon by said company; 3. One-half of all moneys theretofore loaned to said laundry company by said George R. Myers, less all payments made thereon by said company; and, 4. Interest on said sums at seven per cent per annum. It was further provided that an accounting for any dividends paid upon said stock should be made and credited to Keifer at the time of his exercising said option to purchase. By said contract R. H. Myers further covenanted to advance to the company from time to time such sums of money, not exceeding four thousand dollars, as might be necessary to save the company from bankruptcy. At the same time, and with the consent of Keifer, an agreement in writing was made between said bank and R. H. Myers, whereby the bank agreed to deliver the one hundred and ninety-eight shares of stock so pledged to it by Keifer to the said R. H. Myers at any time upon his paying the sum of one thousand dollars, to be applied on Keifer's indebtedness to said bank, and the delivery to the bank of an agreement on the part of R. H. Myers to pay any deficiency, not exceeding seven hundred and fifty dollars, which might remain upon Keifer's note after exhausting the real estate so held by it as security for the payment thereof.

At the request of the defendant, said George R. Myers, at about the same time, to wit, December 29, 1903, transferred

and delivered the one hundred and ninety-eight shares of stock so held by him to defendant. A year later, on December 29, 1904, said George R. Myers and defendant entered into a contract as follows:

"George R. Myers, of Los Angeles, California, hereby acknowledges the transfer and delivery to him to R. H. Myers of Redlands, California, on or about the 29th day of December, 1903, of 198 shares of the capital stock of the Sanitary Laundry Co., a corporation, and that said stock was so transferred and pledged to said R. H. Myers to secure the said R. H. Myers for services to be rendered, and against all loss, expense and liability he might incur by reason of his purchasing from J. H. Keifer an equal number of shares of the capital stock of the Sanitary Laundry Co. and entering into an agreement dated the said 29th day of December, 1903, with the said J. H. Keifer.

"Said transfer and pledge was made and said stock has at all times been retained by said R. H. Myers with the understanding and agreement between them, that when he was paid for his services and expenses and became satisfied that he was discharged from all obligations by reason of his assumption of J. H. Keifer's responsibilities as a stockholder in the said Sanitary Laundry Co., that said stock was to be redelivered and re-transferred to said Geo. R. Myers or to his order.

"The said Geo. R. Myers also agrees that $1000 is a reasonable sum due to said R. H. Myers by reason of his services rendered and expense incurred in connection herewith to date.

"The said R. H. Myers hereby acknowledges his obligation to re-deliver and re-transfer the said 198 shares of the capital stock of the Sanitary Laundry Co. to said Geo. R. Myers, or to his order, upon receiving full satisfaction for all just claims and demands he may have, either against the sanitary Laundry Co., or to the said Geo. R. Myers, and release from all obligations and liabilities because of his becoming a stockholder in the said corporation as aforesaid.

"In witness whereof the said parties hereto have hereunto set their hands this 29th day of December, 1904.

"G. R. MYERS,
"R. HOLTBY MYERS."

As alleged in the complaint and not denied, this agreement was prepared and submitted to George R. Myers for his signature by defendant and, at his request, signed by the former, who "acted upon the confidence which he reposed in defendant by reason of their aforesaid relations, and by reason of the fact that he regarded defendant as his friend, relative and adviser, and as coming to his assistance in regard to the aforesaid financial embarrassment of the said corporation." "That in signing said agreement, and in transferring and delivering said pledged stock to defendant as aforesaid, plaintiff intended to and believed that he was pledging same to defendant to secure said defendant for moneys advanced and to be advanced and for services rendered and to be rendered by defendant unto said corporation as aforesaid, and also to secure defendant against any personal liability for the payment of the debts of said corporation existing at the time of the transfer unto defendant of the said stock so as aforesaid transferred to him by said Keifer, and for no other purpose, and plaintiff alleges that such intention and belief on his part was known to defendant prior to the signing of said agreement, and that he relied upon the defendant to draw an agreement for said purposes and none other."

Defendant advanced and procured to be advanced to the corporation certain money, for which the corporation made its notes bearing interest at the rate of seven per cent, for the procuring of which defendant claimed compensation in the sum of one thousand dollars, which sum, it was alleged, together with all advances made or procured to be made by defendant to the corporation, was, as alleged in the complaint, at the time plaintiff demanded a redelivery of the stock on December 27, 1907, fully paid, and defendant likewise paid and reimbursed for all services rendered and loss or expense incurred under the terms of said writing so made between defendant and said George R. Myers; and also alleged that said defendant was fully released and discharged from any and all liability to the creditors of the corporation by reason of being a stockholder therein, and that all the terms and conditions of said written agreement so made between George R. Myers and defendant, and upon the happening of which defendant agreed to redeliver the one hundred and ninety-eight shares of stock, were, prior to the commencement of the

action, fully performed and fulfilled. But defendant, although requested so to do, refused to redeliver the stock and detains the same from plaintiff.

The answer admits the execution of this agreement between George R. Myers and defendant, denies performance of the conditions under which the stock was pledged, and alleges "that in and by said written agreement so entered into by and between plaintiff and defendant it was expressly covenanted and agreed by the parties to said agreement that the plaintiff's one hundred and ninety-eight shares of stock in said corporation should be, and the same was, transferred and pledged unto this defendant to secure this defendant for services to be rendered, and also against all loss, expense, and liability which he, this defendant, might incur by reason of his purchasing from the said J. H. Keifer an equal number of shares of the capital stock of the said corporation, viz.: 198 shares"; and that by reason of purchasing from said Keifer said one hundred and ninety-eight shares of the capital stock of said corporation he incurred loss, liability and expense in the sum of five thousand dollars, no part of which has been paid, and which sum is still secured by the stock so pledged to him under the terms of said agreement. By an amended and supplemental answer filed after the death of George R. Myers, defendant alleged that in accordance with the terms and conditions of the agreement dated December 29, 1904, he rendered services, expended money, and sustained loss by reason of the purchase of Keifer's one hundred and ninety-eight shares of stock, and by reason of claims and demands against the Sanitary Laundry Company and said George R. Myers, in the sum of $4,719.38, as shown by an itemized statement of account attached as an exhibit to said amended and supplemental answer, a claim for which was duly presented to the executor of the estate of deceased and by him rejected.

The court found that it is not true that by reason of defendant's purchasing from Keifer the one hundred and ninety-eight shares of stock he incurred loss, expense, or liability in any sum whatsoever; that it is not true that in accordance with the terms and conditions of the agreement between George R. Myers and defendant, dated December 29, 1904, defendant rendered services, expended money, or sus-

tained loss in any sum by reason of the purchase from Keifer of the one hundred and ninety-eight shares of stock, or by reason of claims or demands against the Sanitary Laundry Company or the said George R. Myers, he rendered services, expended money, or sustained loss in the sum of $4,719.38, or in any sum whatever; that it is not true that the moneys, or any part thereof, alleged to have been expended by defendant, were paid out in accordance with the said contract, or that the same or any part thereof constituted or were losses or damages sustained by defendant under the terms or conditions of said contract; and the court found all the allegations of the complaint to be true.

The only allegation of the complaint as to which an issue is joined by denials contained in the answer is that wherein it is alleged that prior to the commencement of the suit plaintiff fully performed all the conditions of the contract, by reason whereof he was entitled to the redelivery of the stock. Except as to the finding in favor of plaintiff upon this issue, defendant is in no position to complain of the finding that all the allegations of the complaint are true, since other allegations thereof are deemed to be admitted.

It is conceded that prior to the demand made to redeem the stock by plaintiff, defendant had been discharged from all liability as a stockholder to the creditors of the corporation, and that prior thereto all demands against the corporation due to defendant had been fully satisfied and discharged. Hence, since these conditions were performed, they may be eliminated from a consideration of the contract upon which defendant bases his claim to retain possession of the stock.

Referring to the contract of December 29, 1904, it is recited that the stock was pledged to defendant to, first, secure him "for services to be rendered." While this paragraph is silent as to the nature of the services, as well as in stating for whom the service was to be rendered, it is clear from the last paragraph of the contract, since defendant therein acknowledged his obligation to redeliver the stock "upon receiving full satisfaction for all just claims and demands he may have against . . . George R. Myers," that the "services to be rendered," mentioned in the first paragraph, referred to and contemplated services to be rendered for George R. Myers, as well as for the corporation. The second condition of the

pledge was to secure defendant against ''all loss, expense, and liability he may incur by reason of his purchasing of J. H. Keifer an equal number of shares of the capital stock of the Sanitary Laundry Co.'' Defendant, however, never purchased the stock or any stock in said company; hence no claim for loss, expense, or liability could be predicated upon this covenant. The third condition of the pledge was to secure defendant against loss, liability, and expense incurred by him in entering into an agreement dated the twenty-ninth day of December, 1903, with J. H. Keifer. This agreement, the substance of which is hereinbefore stated, was one wherein and whereby Keifer pledged to defendant one hundred and ninety-eight shares of stock to secure the performance of certain conditions (*Keifer* v. *Myers,* 5 Cal. App. 668, [91 Pac. 163]), all of which acts, covenants, and conditions said Keifer fully performed, as determined in a suit brought by Keifer against R. H. Myers for the redemption of said stock so pledged, and wherein an accounting between Keifer and this defendant was had and mutual and appropriate remedies accorded to each. (*Keifer* v. *Myers,* 14 Cal. App. 338, [111 Pac. 1038].)

This brings us to the point of the controversy. Notwithstanding the agreement made with Keifer was a contract of pledge to secure the performance of certain acts on the part of Keifer therein specified, and all of which were fully performed, defendant refused, upon demand of Keifer, to redeliver the stock so pledged; whereupon Keifer brought suit to compel a redelivery thereof. Defendant resisted this action, wrongfully claiming that the contract with Keifer constituted a sale by the latter to him of the one hundred and ninety-eight shares of stock. In an effort to sustain his contention and retain possession of the stock, he prosecuted two appeals from the decision of the superior court, wherein it was fully determined that Keifer was entitled to the redemption of the stock. After Keifer demanded his stock and made tender of the balance due on account of the pledge thereof, defendant voluntarily paid to the Broadway Bank & Trust Company certain moneys to be applied upon Keifer's notes, which sums it was held in the trial of *Keifer* v. *Myers* he could not recover, since the payment was voluntarily made. (*Keifer* v. *Myers,* 14 Cal. App. 338, [111 Pac. 1038].) Not-

withstanding such decision, defendant now insists that plaintiff be required to pay the same with interest, together with a further sum of $2,656.80, which defendant alleges he paid out or assumed payment thereof in his wrongful and futile effort to hold the Keifer stock pledged to him, payment of which sums so voluntarily paid to the bank and that paid out in litigation he demands from plaintiff as a condition of redelivering the stock.

The loss, expense, and liability against which George R. Myers agreed to protect defendant in entering into the contract with Keifer was such only as he might incur under and by virtue of the terms of that contract, and not by reason of acts on the part of defendant and expenditures made wholly without the terms of the agreement. If, as held in the trial of the case of *Keifer* v. *Myers,* defendant could not under the contract recover from Keifer moneys voluntarily paid to the bank for his account, then, in the absence of some specific provision in the contract made with George R. Myers, he could not recover the same from plaintiff. This is equally true with respect to moneys paid out in litigation, since, if defendant had complied with Keifer's just demand, when accompanied by a tender of all that was due upon the contract, such payments would have been unnecessary. The disbursements were made and expenses incurred by reason of acts of the defendant unwarranted by the terms of the Keifer contract and for which George R. Myers, under the terms of his contract, was in no wise liable.

If in enforcing the contract of pledge the proceeds of the sale of the Keifer stock were insufficient to repay defendant for advances made thereunder, a loss would follow; if it became necessary to initiate proceedings to enforce the contract in accordance with its terms, incidental expense would follow, and since the contract contemplated that defendant *might,* as to the bank at least, occupy the position of a stockholder, he might by reason thereof incur liability; all of which were contingencies upon the happening of which just claims and demands would arise in defendant's favor, and against George R. Myers.

While in our opinion the terms of the contract are, when read in connection with the Keifer contract, clear and unequivocal, appellant nevertheless insists that the contract is

uncertain and ambiguous as to what was intended by the words "loss, expense, and liability" against which defendant was to be protected. Upon this theory defendant was permitted to introduce extrinsic evidence consisting of letters and oral testimony touching the situation of the parties and the practical construction given by them to the contract. Such evidence merely tends to show that, while George R. Myers had no pecuniary interest in the result of the litigation between Keifer and the defendant, his sympathies were with the latter; that through the bookkeeper of the company defendant was informed on several occasions as to Keifer's expressed intention to examine the books of the corporation, and that said bookkeeper consulted defendant's attorney with regard to the propriety of permitting such examination; that defendant's attorney stated to George R. Myers that according to his interpretation of the contract the latter would be liable for the expense of the litigation. But it does not appear that George R. Myers ever assented to such interpretation; on the contrary, the evidence is wholly consistent with a contrary view. That George R. Myers asked defendant for a copy of the Keifer contract, which he submitted to his own attorneys and from whom he obtained an opinion as to Keifer's rights thereunder; that as early as March 24, 1905, and prior to the commencement of the Keifer suit, George R. Myers, through a letter written to defendant, stated that he intended to remain absolutely neutral in the matter and that he did not want his name used in connection with it. Naturally, George R. Myers, who was interested in the corporation to the extent of one-half thereof, was interested as to the ownership of the other half. Without further reviewing the evidence adduced, suffice it to say that a careful examination thereof fails to show any acts on the part of George R. Myers, or any statements made by him, which could warrant the court in construing the contract in accordance with appellant's contention. Such interpretation, whereby the estate of George R. Myers would be required to reimburse defendant in the sum of $4,719.38, a large part of which, without any obligation so to do, was voluntarily paid by defendant for the benefit of another, and the remainder of said sum expended in litigation whereby defendant sought to wrongfully retain possession of the Keifer stock, and in the result

of which litigation said George R. Myers had no pecuniary interest, is wholly at variance with the admitted fact that when defendant prepared the draft of the contract of December 29, 1904, and procured the signature of George R. Myers thereto, he was his confidential adviser and avowed friend, desirous of helping him.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.